IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| DANIEL RICO, individually and as a representative of a class of similarly situated persons, and on behalf of the RBC U.S.A. RETIREMENT AND SAVINGS PLAN, | ) ) ) ) )    Case No. ) |
| *Plaintiff*, | )    CLASS ACTION ) |
| v. | ) ) |
| RBC USA HOLDCO CORPORATION, THE BOARD OF DIRECTORS OF RBC USA HOLDCO CORPORATION AND ITS MEMBERS, THE RBC USA PENSIONS AND BENEFITS COMMITTEE AND ITS MEMBERS, DOES 1-20, and DOES 21-40, | ) ) ) ) ) ) ) ) |
| *Defendants*. | ) ) |

CLASS COMPLAINT FOR DAMAGES

## I.    INTRODUCTION

1.    This case arises from a breach of fiduciary duty under the Employee Retirement Income Security Act ("ERISA") by the fiduciaries of the RBC U.S.A. Retirement and Savings Plan ("the Plan").

2.    RBC USA Holdco Corporation ("RBC "), the RBC Board of Directors (the "Board"), the RBC Board of Directors' members (each, a "Board Member"), the RBC USA Pensions and Benefits Committee (the "Committee" or the "Plan Committee"), and the RBC USA Pensions and Benefits Committee's members (each, a "Committee Member and

1

collectively with RBC, the Board and each Board Member, and the Committee (the "RBC Defendants") are the fiduciaries of the Plan who breached their duty.

3.     As fiduciaries, the RBC Defendants offer the Plan to RBC employees as a means to save for retirement. As fiduciaries, the RBC Defendants must select a menu of investment options for the Plan. Participants in the Plan can only invest their retirement savings in the investment options that the RBC Defendants select.

4.     The RBC Defendants have an obligation to select and retain these investment options solely in the interest of the Plan's participants and beneficiaries. ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1). They must continually monitor and reassess every individual investment option on their own merits and remove any that become imprudent.

5.     Despite their fiduciary obligation, the RBC Defendants have kept two grossly underperforming funds in the plan—the T. Rowe Price Growth Stock Fund (the "Growth Stock Fund") and the T. Rowe Price Mid Cap Growth Fund (the "Mid Cap Fund"). The RBC Defendants have kept the Growth Stock Fund in the Plan for over 13 years and the Mid Cap Fund for over 17 years.

6.     The RBC Defendants' decision not to remove the Growth Stock Fund and the Mid Cap Growth Fund (together the "T. Rowe Price Funds") has adversely impacted the retirement savings of Plan participants by hundreds of millions of dollars.

## II.     OVERVIEW OF CLAIMS

7.     Plaintiff Daniel Rico (the "Plaintiff") brings this action under 29 U.S.C. § 1132(a)(2) on behalf of the Plan and the Plan's participants and beneficiaries against the

2

RBC Defendants for breach of fiduciary duties under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461 ("ERISA").

8. In 2009, the RBC Defendants selected the Mid Cap Growth Fund as an investment option for the Plan. In 2013, RBC added the Growth Stock Fund to the Plan's investment lineup.

9. As of December 31, 2024, Plan participants had invested over $565,000,000 of their retirement savings—about 13% of the Plan's total assets—in the Growth Stock Fund, and over $174,000,000—about 4% of the Plan's total assets—in the Mid Cap Fund.

10. Investors and plan fiduciaries alike frequently assess the quality of a fund and its potential for future earnings based on its preceding one-year, three-year, five-year, and ten-year investment performance.

11. In each of the one-, three-, five-, and ten-year periods leading up to December 31, 2020, the Mid Cap Fund's cumulative performance lagged its benchmark, the Russell Mid Cap Growth Index (the "Russell Mid Cap").[1] In the five years leading up to December 31, 2020, the cumulative performance of the Mid Cap Fund lagged the Russell Mid Cap by over 21% (135% v 114%), averaging 2.28% annually.

---

[1] The Russell Mid Cap Growth Index is independently maintained by FTSE Russell. The Russell Mid Cap Growth Index measures the performance of the mid-cap growth segment of the U.S. stock market. It includes those Russell Mid Cap companies with relatively higher price-to-book ratios, higher forecast medium-term growth, and higher sales-per-share historical growth (i.e., growth companies).

12.     During the same one-, three-, five-, and ten-year periods, the Growth Stock Fund lagged its benchmark, the Russell 1000 Growth Index (the "Russell 1000").[2] In the five years leading up to December 31, 2020, the cumulative investment performance of the Growth Stock Fund lagged the Russell 1000 by 17% (159% v. 142%), an average of over 1.66% annually.

13.     Annual underperformance of this magnitude is significant. For example, a 35-year-old participant with $100,000 in retirement savings will see that amount grow to $761,000 by retirement age, assuming a 7% return and no further contributions or withdrawals. However, that same $100,000 earning a lower investment return of 6.50% (or just 0.50% less) will grow to only $661,000, or $100,000 less.

14.     This level of underperformance is almost impossible to make up. Statistically speaking, funds with this level of underperformance are more likely to continue to underperform. Any prudent fiduciary exercising stewardship over the Plan would understand this. Yet the RBC Defendants did nothing.

15.     As shown in Section IX, **Tables 1.b** and **2.b**, the T. Rowe Price Funds' underperformance worsened after the start of the Class Period. Since January 1, 2021, the Growth Stock Fund's cumulative performance fell over 44 percentage points (94% v. 50%)

---

[2] The Russell 1000 Growth Index is independently maintained by FTSE Russell 1000, a wholly-owned subsidiary of the London Stock Exchange Group. FTSE Russell 1000 is a leading global provider of benchmarking, analytics, and data solutions for investors with over 30 years in the business. The Russell 1000 Growth Index measures the performance of the large-cap growth segment of the U.S. stock market. It includes those Russell 1000 companies with relatively higher price-to-book ratios, higher forecast medium-term growth, and higher sales-per-share historical growth (i.e., growth companies).

below the Russell 1000. During the same period, the Mid Cap Fund's cumulative performance fell about 8 percentage points (38% v. 30%) below the Russell Mid Cap. The T. Rowe Price Funds' underperformance was even worse when compared to similar funds that invest in large and mid-sized companies (the "Comparator Funds").

16.    During the past 5-year and 10-year periods, the Growth Stock Fund's portfolio has ranked, respectively, in the lowest and second lowest performance quartiles of its peer universe of funds that invest in the largest companies in the United States (a.k.a. large-cap stocks).

17.    During each of the past 1-year, 3-year, and 10-year periods, the Mid Cap Fund's portfolio has ranked in either the lowest or second lowest performance quartile of its peer universe of funds that invest in medium-sized companies in the United States (a.k.a. mid-cap stocks).

18.    Over the last ten years, the T. Rowe Price Funds have experienced a substantial outflow of assets from investors. Comparing new shares sold to existing shares redeemed, both funds have experienced net redemptions in every one of the last ten years. Even including assets reinvested in the T. Rowe Price Funds from capital gains and dividend distributions, the Mid Cap Fund experienced a net loss of assets in seven of the last ten years while the Growth Stock Fund experienced a loss in each of the last ten years.

19.    Between 2016 and the Funds' end-of-year filing on December 31, 2025, the Growth Stock Fund has seen a net decrease from capital share transactions of over $33 billion in assets. The Mid Cap Fund has similarly lost over $8 billion in assets. Divestment

of this magnitude is significant and demonstrates investors' lack of faith in the T. Rowe Price Funds. A prudent fiduciary would view this market indicator as a major red flag.

20.     The T. Rowe Price Funds' persistent poor performance and evidence of a mass outflow of assets raise a plausible inference that as of the start of 2021 the T. Rowe Price Funds could not be expected to provide higher investment returns for the Plan and therefore were not prudent investments. Their retention in the Plan was the product of an imprudent process.

21.     The results of retaining the T. Rowe Price Funds are disastrous for Plan participants. As described in Section IX, **Tables 1.c** and **2.c**, the failure to remove the T. Rowe Price Funds has lost the Plan and its participants between approximately $213,000,000 and $433,500,000 in retirement savings since January 1, 2021, the start of the Class Period.

22.     To remedy RBC's breach of fiduciary duty, Plaintiff brings this action on behalf of the Plan under 29 U.S.C. § 1132(a)(2) to enforce the RBC Defendants' personal liability under 29 U.S.C. § 1109(a) to make good to the Plan all losses resulting from each breach of fiduciary duty occurring during the Class Period. In addition, Plaintiff seeks such other Plan-wide equitable or remedial relief for the Plan as the Court may deem appropriate.

23.     Plaintiff did not have knowledge of all material facts (including, among other things, comparisons of the Plan's investment performance relative to other available investment alternatives) necessary to understand that the RBC Defendants breached their fiduciary duties until shortly before filing this Complaint. Further, Plaintiff does not have

actual knowledge of the specifics of the RBC Defendants' decision-making processes with respect to the Plan, including the RBC Defendants' processes for monitoring and removing Plan investments, because this information is solely within the possession of the RBC Defendants prior to discovery. For purposes of this Complaint, Plaintiff has drawn reasonable inferences regarding these processes based upon (among other things) the facts set forth herein.

### III.    PARTIES

#### A.    Plaintiff

24.    Plaintiff Daniel Rico brings this suit in a representative capacity on behalf of the Plan and their participants and beneficiaries pursuant to 29 U.S.C. § 1132(a), seeking appropriate relief under 29 U.S.C. § 1109 to protect the interests of the entire Plan. Plaintiff Daniel Rico was a participant in the Plan, as defined in 29 U.S.C. § 1002(7), and invested in the Growth Stock Fund during the Class Period. Plaintiff Daniel Rico suffered individual injury by investing in the Growth Stock Fund.

#### B.    Defendants

25.    Defendant RBC USA Holdco Corporation ("RBC") is a bank holding company with offices in New York, New York. RBC is the Plan Sponsor.

26.    RBC acts through its Board of Directors. Defendant Board of Directors and current and former Board Members of RBC are responsible for appointing and monitoring the RBC USA Pensions and Benefits Committee (the "Committee").

27.    The Committee is a fiduciary of the Plan and oversees the operation and administration of the Plan from their offices in Minneapolis, Minnesota. Committee

7

Members are appointed by the Board of Directors of RBC. Current and former Committee Members are fiduciaries of the Plan under 29 U.S.C. § 1002(21)(A) because they exercise discretionary authority and/or discretionary control over management of the Plan.

28. Plaintiff is currently unaware of the identities of the individual members of the Committee or any other committee that exercised discretionary authority during the Class Period. Accordingly, those individuals are collectively named Defendants Does 1-20. Further, Plaintiff is not currently aware of the identities of the members of the Board of Directors to whom the Board delegated responsibility for the Committee and the Plan. Accordingly, those individuals are named Defendants Does 21-40. Plaintiff will substitute the real names of the Does when they become known to Plaintiff. To the extent the RBC Defendants delegated any of their fiduciary functions to another person or entity, the nature and extent of which has not been disclosed to Plaintiff, the person or entity to which the function was delegated is also a fiduciary under 29 U.S.C. § 1002(21)(A) and thus alleged to be a Doe Defendant.

## IV.   JURISDICTION, VENUE, AND STANDING

29. This Court has exclusive jurisdiction over the subject matter of this action under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331 because it is an action under 29 U.S.C. § 1132(a)(2).

30. This District is the proper venue for this action under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b) because it is the District in which the subject Plan is administered and where at least one of the alleged breaches took place. It is also the District in which the RBC Defendants reside.

31.    As a participant in the Plan and holder of one or more of the T. Rowe Price Funds, Plaintiff has standing to bring claims on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2) and to seek appropriate Plan-wide relief under 29 U.S.C. § 1109. Thus, Plaintiff brings this suit under 29 U.S.C. § 1132(a)(2) in a representative capacity on behalf of the Plan as a whole and seeks remedies under 29 U.S.C. § 1109 to protect the Plan.

32.    Plaintiff has standing to bring claims on behalf of all holders of the T. Rowe Price Funds because the alleged harms to holders of the T. Rowe Price Funds can be traced to the same RBC conduct: the imprudent process violative of ERISA that the RBC Defendants used to select, monitor, and retain each and every one of the T. Rowe Price Funds. This singular conduct with respect to the T. Rowe Price Funds harmed each of the holders of the specific T. Rowe Price Funds, as discussed in this Complaint.

## V.    ERISA'S FIDUCIARY STANDARDS

### A.    Overview of ERISA's Fiduciary Duty of Prudence

33.    ERISA's fiduciary duties are the highest known to the law. ERISA's duty of prudence requires fiduciaries to discharge their responsibilities with the care, skill, prudence, and diligence of a prudent expert while focusing exclusively on the best interests of plan participants. Even where participants choose their investments, plan fiduciaries must conduct their own independent evaluation to determine which investments may be prudently included in the plan's menu of options.

34.    As part of ERISA's duty of prudence, a fiduciary must determine whether a particular investment is reasonably designed, as part of the plan's menu, to further the purposes of the plan, taking into consideration the risk of loss and the opportunity for gain

(or other return) associated with the investment compared to the opportunity for gain (or other return) associated with reasonably available alternatives with similar risks.

35. In addition to prudently selecting investment options, plan fiduciaries have a continuing duty to monitor plan investment options and remove imprudent ones within a reasonable time.

### B. Fiduciary Liability Under ERISA

36. Under 29 U.S.C. § 1109, fiduciaries to the Plan are personally liable to make good to the Plan any harm caused by their breaches of fiduciary duty. Section 1109(a) provides in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

37. 29 U.S.C. § 1132(a)(2) is the enforcement mechanism of 29 U.S.C. § 1109. It enables participants and beneficiaries to bring civil actions to seek appropriate relief under 29 U.S.C. § 1109.

### C. Co-Fiduciary Liability

38. ERISA provides for co-fiduciary liability where a fiduciary knowingly participates in, or knowingly fails to cure, a breach by another fiduciary. Specifically, under 29 U.S.C. § 1105(a), a fiduciary shall be liable for a breach of fiduciary duty by a co-fiduciary if:

10

i.   He participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

ii.   By his failure to comply with [29 U.S.C. § 1104(a)(1)] in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

iii.   He has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

## VI.   THE PLAN

39.   The Plan is a profit-sharing plan as described in Section 401(k) of the Internal Revenue Code, I.R.C. § 401(k) (1986) and is subject to the provisions of ERISA. The plan is established and maintained under a written document in accordance with 29 U.S.C. § 1102(a). RBC is the sponsor of the plan.

40.   During the Class Period, the Plan provided for the retirement income of nearly 15,000 RBC employees, former employees, and their beneficiaries (the "Plan participants"). Defendants exclusively controlled the selection and retention of the Plan's investment options, which include both mutual funds and collective investment trusts. Plan participants' retirement account balances primarily depended on contributions they made to their accounts, RBC's matching contributions, and the performance (net of fees and expenses) of the Plan's investment options.

41.   As of December 31, 2024, Plan participants had invested over $739 million—about 17% of the Plan's total assets—into the T. Rowe Price Funds.

## VII.   OVERVIEW OF INVESTMENT FUNDS

42.   An investment fund (such as a mutual fund, collective investment trust, or pooled separate account) is a pool of money contributed by a group of investors with

similar investment objectives. The investment adviser firm takes this pool of money and then hires a portfolio management team to invest in different stocks on behalf of all investors in the fund. The portfolio management team manages the investments in each fund in accordance with the investment objectives and strategies set forth in each fund's investment guidelines (e.g. large-cap stocks or mid-cap stocks). For providing this service, the investment adviser charges an investment advisory fee.

### A.     Active vs. Passive Management

43.     The Growth Stock Fund and the Mid Cap Fund are actively managed funds, that is, funds that rely on the professional judgment of a portfolio management team to make decisions about the funds' portfolios of investments.

44.     For the Growth Stock Fund, a large-cap portfolio management team decides the industries in which the fund will allocate assets, as well as what stocks to buy and sell and when. The Growth Stock Fund pays T. Rowe Price a fee for these services, a fee which the Growth Stock Fund passes on to investors, including the Plan's participants.

45.     Likewise, the Mid Cap Fund is managed by a mid-cap portfolio management team that decides the industries in which the fund will allocate assets, as well as what stocks to buy and sell and when. The Mid Cap Fund pays T. Rowe Price a fee for these services, a fee which the Mid Cap Fund passes on to investors, including the Plan's participants.

46.     The fund's investment adviser selects a benchmark—typically a market index—against which investors can evaluate and compare a fund's investment performance. These indexes are comprised of investments whose characteristics (i.e., market capitalization, risks, and potential rewards) match those investments that the fund's

12

portfolio management team has identified for inclusion in the fund's portfolio. A benchmark in the investment world is akin to par in the professional golf world. The goal is to match or beat it.

47. For the Growth Stock Fund, T. Rowe Price's primary focus should be to outperform the Fund's stated benchmark, the Russell 1000. Indeed, T. Rowe Price charges fees for active management on the premise that the Growth Stock Fund will consistently beat the Russell 1000.

48. For the Mid Cap Fund, T. Rowe Price's primary focus should be to outperform the stated benchmark: the Russell Mid Cap. T. Rowe Price charges fees for active management on the premise that the Mid Cap Fund will consistently beat the Russell Mid Cap.

49. Investment research and analysis typically drive the investment decisions of actively managed funds. Factors that a portfolio management team may consider include, but are not limited to, market trends, a company's financial condition, perceived risk of investing in the company, industry and sector outlook, and the underlying stocks' performances in various market conditions. For example, based on their respective professional judgment, at any given time one large-cap portfolio management team may like large-cap healthcare stocks while another may like large-cap manufacturing stocks while a third may like large-cap stocks whose issuers focus on financial services.

50. Without variations between portfolio holdings, all funds would own identical investment portfolios and have nearly identical investment performance. Active management offers investors the opportunity to earn superior returns relative to the

designated benchmark through the portfolio management team's astute selection of investments. Astute selection typically drives superior investment performance over time and distinguishes the better-performing funds from the underperforming ones. Bad asset allocation and poor investment selection generally drive long-term underperformance.

51.     Active managers run the risk that their methods and analyses, including models, tools, and data, may be flawed or incorrect and may not achieve the fund's aim. This could cause the fund to lag its benchmark. Given that active managers are paid to beat their benchmark, chronic underperformance is a red flag that indicates investors are not getting their money's worth and should consider other investment options.

52.     Because every investment necessarily causes a plan to forgo other investment opportunities, an investment will not be prudent if it would be expected to provide a plan with a lower rate of return than available alternative investments with commensurate degrees of risk or is riskier than alternative available investments with commensurate rates of return. The Department of Labor has maintained this position on prudence for over 30 years. *See* Department of Labor Interpretive Bulletin 94-1 (June 23, 1994).

53.     Market research suggests that most active managers fail to beat their benchmarks. Therefore, a prudent fiduciary monitors actively managed funds carefully. Keeping an actively managed fund that underperforms its benchmark over 3-year, 5-year, or 10-year periods is imprudent from a fiduciary perspective.

54.     Actively managed funds stand in contrast to passively managed funds, whose objective is to replicate the investment performance of a designated benchmark index.

14

55.    The portfolio management team of a passively managed fund makes fewer investment decisions; they decide how to construct a portfolio that tracks that of the benchmark. Therefore, a passively managed fund typically will perform at or near the investment performance of its benchmark. Compared to actively managed funds, the fees for passively managed funds are significantly lower.

56.    When an actively managed fund suffers persistent underperformance, like the T. Rowe Price Funds, a passively managed fund represents a viable option. Large providers, such as Vanguard and Fidelity, are well-known leaders in the passively managed fund space.

**B.    Investment Aims of Large-Cap and Mid-Cap Growth Funds**

57.    The Growth Stock Fund is a large-cap growth fund. The stocks of the biggest companies typically dominate these funds. The principal aim of large-cap growth funds is to provide investors with long-term growth of capital.

58.    The Mid Cap Fund is a mid-cap growth fund. The principal aim of mid-cap growth funds is to provide investors with long-term growth of capital.

59.    The stocks of companies in the middle range of publicly traded companies typically dominate these funds. Although the range periodically changes, the middle range is approximately $2 billion to $10 billion in market capitalization.

60.    The Growth Stock Fund and the Mid Cap Fund both have a growth style. Funds with a growth style invest in stocks of companies that are projected to grow faster than other stocks. Growth is defined based on fast growth (high growth rates for earnings,

15

sales, book value, and cash flow) and high valuations (high price ratios and low dividend yields).

### C.      Investment Risks of Large-Cap and Mid-Cap Growth Funds

61.     The principal categories of risks for the Growth Stock Fund and the Mid Cap Fund include market risk, issuer risk, and the risk of investing in growth-oriented stocks. The Mid Cap Fund carries the additional risk of investing in smaller, middle-sized companies.

62.     Market risk is the chance that stock prices overall will decline. Stock markets tend to move in cycles, with periods of rising prices and periods of falling prices, so each fund is subject to the risk that the market as a whole will fall.

63.     Issuer risk is the chance that prices of, and the income generated by, individual securities of companies held by the fund (e.g., UnitedHealth Group) may decline in response to various factors directly related to the issuers of such securities, including reduced demand for an issuer's goods or services, poor management performance, major litigation, investigations, or other controversies related to the issuer.

64.     Investing in growth-oriented stocks also carries risk. Such stocks (e.g., Tesla) may experience larger price swings and greater potential for loss than other types of stocks, such as those that are considered value-oriented or those that historically have paid continuous dividends (e.g., 3M Company).

65.     Investing in mid-cap companies carries additional risk. Mid-cap companies (e.g., Churchill Downs) are smaller and likely to be more volatile than investments in securities issued by large-cap companies. Mid-cap companies may have less seasoned

16

management, narrower product lines, and less capital reserves and liquidity than large-cap companies, and are therefore more sensitive to economic, market, and industry changes.

### D. Potential Investment Rewards of Actively Managed Large-Cap and Mid-Cap Growth Funds: Fiduciaries Select Benchmarks to Evaluate Achievement of Potential Rewards

66. Investments are judged by investment performance. Typically, investors want a portfolio that consists of investments that meet or exceed their respective benchmarks. Whether an investment performs well relative to its benchmark is concrete rather than abstract.

67. For an actively managed investment fund, the potential reward is that the fund will deliver positive investment returns that exceed those of its benchmark. Investment advisers select benchmarks that they believe have similar investment characteristics as those of their fund.

68. T. Rowe Price selected the Russell 1000 as the benchmark for the Growth Stock Fund and the Russell Mid Cap as the benchmark for the Mid Cap Fund.

## VIII. THE GROWTH STOCK FUND AND ITS COMPARATOR FUNDS AND BENCHMARK

**The T. Rowe Price Growth Stock Fund**

69. The Growth Stock Fund's aim is to seek long-term growth of capital.

70. The Fund pursues its aim by normally investing at least 80% of its net assets in the common stocks of large-sized companies with growth characteristics.

71. Currently, approximately 95% of the Fund's portfolio is invested in large-cap stocks. Among its top holdings are stocks in NVIDIA, Microsoft, and Broadcom.

72.     The Growth Stock Fund's potential reward is that it will generate positive investment returns that outperform the Russell 1000.

73.     The Growth Stock Fund's principal risks are related to (1) market risk, (2) issuer risk, and (3) the risks of investing in growth-oriented stocks.

74.     By investing a significant portion of its assets in stocks, including growth-oriented stocks, the Growth Stock Fund is considered as having a very aggressive risk profile.

75.     The Growth Stock Fund is not the only large-cap growth fund on the market with the same mix of aims, risks, and potential rewards as described above. As shown below, numerous substantially similar funds have existed throughout the Class Period and before.

**Comparator 1: Fidelity Blue Chip Growth Fund**

76.     The Fidelity Blue Chip Growth Fund (the "Fidelity Fund") has similar aims, risks, and potential rewards to those of the Growth Stock Fund.

77.     Like the Growth Stock Fund, the Fidelity Fund is an actively managed large-cap growth fund.

78.     The Fidelity Fund's aim is to seek long-term growth of capital. Like the Growth Fund, the Fidelity Fund pursues its aim by investing primarily in common stocks of large-sized companies with growth characteristics.

79.     Currently, approximately 83% of the Fidelity Fund's portfolio is invested in large-cap stocks. Like the Growth Stock Fund, the Fidelity Fund's top stock holdings include NVIDIA, Microsoft, and Broadcom.

18

80. Like the Growth Stock Fund, the Fidelity Fund identifies the Russell 1000 as one of its benchmarks.

81. The Fidelity Fund's potential reward is that the fund will generate positive investment returns that outperform the Russell 1000.

82. Its principal risks are related to (1) market risk, (2) issuer risk, and (3) the risks of investing in growth-oriented stocks.

83. By investing a significant portion of its assets in stocks, including growth-oriented stocks, the Fidelity Fund, like the Growth Stock Fund, is considered as having a very aggressive risk profile.

84. The aims, risks, and potential rewards of the Fidelity Fund are similar to those of the Growth Stock Fund given the similarities in the two funds' investment strategies, the types of stocks the two funds own, and their very aggressive risk profiles. Moreover, both funds are actively managed investment options that seek to outperform relative to the same benchmark, the Russell 1000.

85. These facts make the Fidelity Fund a meaningful comparator to the Growth Stock Fund.

**Comparator 2: Alger Focus Equity Fund**

86. The Alger Focus Equity Fund (the "Alger Fund") has similar aims, risks, and potential rewards to those of the Growth Stock Fund.

87. Like the Growth Stock Fund, the Alger Fund is an actively managed large-cap growth fund.

88.     The Alger Fund's aim is to generate long-term growth of capital. Like the Growth Stock Fund, the Alger Fund pursues its aim by investing in common stocks of large-sized companies with growth characteristics.

89.     Currently, approximately 78% of the Alger Fund's portfolio is invested in large-cap stocks. Like the Growth Stock Fund, the Alger Fund's top stock holdings include NVIDIA, Microsoft, and Broadcom.

90.     Like the Growth Stock Fund, the Alger Fund identifies the Russell 1000 as one of its benchmarks.

91.     The Alger Fund's potential reward is that the fund will generate positive investment returns that outperform the Russell 1000.

92.     The Alger Fund's principal risks are related to (1) market risk, (2) issuer risk, and (3) the risks of investing in growth-oriented stocks.

93.     By investing a significant portion of its assets in stocks, including growth-oriented stocks, the Alger Fund, like the Growth Stock Fund, is considered as having a very aggressive risk profile.

94.     The aims, risks, and potential rewards of the Alger Fund are similar to those of the Growth Stock Fund given the similarities in the two funds' investment strategies, the types of stocks the two funds own, and their very aggressive risk profiles. Moreover, both funds are actively managed investment options that are benchmarked to the Russell 1000.

95.     These facts make the Alger Fund a meaningful comparator to the Growth Stock Fund.

**Comparator 3: Federated Hermes MDT Large Cap Growth Fund**

96.     The Federated Hermes MDT Large Cap Growth Fund (the "Federated Fund") has similar aims, risks, and potential rewards to those of the Growth Stock Fund.

97.     Like the Growth Stock Fund, the Federated Fund is an actively managed large-cap growth fund.

98.     The aim of the Federated Fund is to generate long-term growth of capital. Like the Growth Fund, the Federated Fund pursues its aim by investing primarily in common stocks of large-sized companies with growth characteristics.

99.     Currently, approximately 82% of the Federated Fund's portfolio is invested in large-cap stocks. Like the Growth Stock Fund, the Federated Fund's top stock holdings include NVIDIA, Microsoft, and Broadcom.

100.    Like the Growth Stock Fund, the Federated Fund identifies the Russell 1000 as one of its benchmarks.

101.    The Federated Fund's potential reward is that the fund will generate positive investment returns that outperform the Russell 1000.

102.    The Federated Fund's principal risks are related to (1) market risk, (2) issuer risk, and (3) the risks of investing in growth-oriented stocks.

103.    By investing a significant portion of its assets in stocks, including growth-oriented stocks, the Federated Fund, like the Growth Stock Fund, is considered as having a very aggressive risk profile.

104.    The aims, risks, and potential rewards of the Federated Fund are similar to those of the Growth Stock Fund given the similarities in the two funds' investment

21

strategies, the types of stocks the two funds own, and their very aggressive risk profiles. Moreover, both funds are actively managed investment options that are benchmarked to the Russell 1000.

105.   These facts make the Federated Fund a meaningful comparator to the Growth Stock Fund.

**Comparator 4: Vanguard Russell 1000 Growth Index Fund**

106.   The Vanguard Russell 1000 Growth Index Fund (the "Vanguard Growth Fund") is a passively managed index fund that seeks to track the performance of the Russell 1000. The Vanguard Growth Fund attempts to replicate the Russell 1000 by investing its assets in the large-cap growth stocks that make up the Russell 1000.

107.   Currently, approximately 87% of the Vanguard Growth Fund's portfolio is invested in large-size companies with growth characteristics. Like the Growth Stock Fund, the Vanguard Growth Index's top stock holdings include NVIDIA, Microsoft, and Broadcom.

108.   The Vanguard Growth Fund's potential reward is that it will generate investment returns in line with the Russell 1000.

109.   The Vanguard Growth Fund's principal risks are related to (1) market risk, (2) issuer risk, and (3) investing in growth-oriented stocks.

110.   By investing a significant portion of its assets in stocks, including growth-oriented stocks, the Vanguard Growth Fund, like the Growth Stock Fund, is considered as having a very aggressive risk profile.

111. By virtue of the similarities in their investment strategies, respective market capitalizations, and risk profiles, the Vanguard Growth Fund and the Growth Stock Fund share similar aims, rewards, and levels of risk.

112. The most telling difference between the Growth Stock Fund and the Vanguard Growth Fund relates to their fees and investment performance. As shown in the table below, the fees of the Growth Stock Fund are nearly six-times the fees of the Vanguard Growth Fund, yet, as illustrated in Section IX below, the Vanguard Growth Fund has significantly superior investment performance.

| Fund Name | Fees |
|---|---|
| T. Rowe Price Growth Stock Fund Class E | 0.34% |
| The Vanguard Russell 1000 Growth Index | 0.06% |

113. The Vanguard Growth Fund tracks the performance of the Russell 1000 and for a low fee. For a prudent fiduciary fed up with the high fees and poor performance of the actively managed Growth Fund and wants to passively track the performance of the Russell 1000 for a low fee, the Vanguard Growth Fund represents a meaningful comparator.

**Comparator 5: Russell 1000 Growth Index**

114. T. Rowe Price—the entity most knowledgeable about the Growth Stock Fund—discloses to the investing public that the Russell 1000 is a "strategy benchmark" for the Growth Stock Fund (i.e., an index that closely aligns with the fund's investment strategy).

23

115.   Therefore, the investment adviser of the Growth Stock Fund necessarily concludes that the Fund and the Russell 1000 share similar investment characteristics; it encourages investors to compare the performance of the Growth Stock Fund to that of the Russell 1000.

116.   The Russell 1000 measures the performance of the large-cap growth segment of the U.S. stock market. It includes those Russell 1000 companies that are similar to the companies included in the Growth Stock Fund, those with large capitalizations, relatively higher price-to-book ratios, higher forecast medium-term growth, and higher sales-per-share historical growth (i.e., growth companies).

117.   The Growth Stock Fund and the Russell 1000 share the same top stock holdings, NVIDIA, Apple, Microsoft, Broadcom, Amazon, Tesla, Meta, Alphabet, and Eli Lilly.

118.   Investors can own the Russell 1000 by investing in exchange-traded funds (ETFs) that own all or substantially all the stocks represented in the Russell 1000. Multiple reputable investment advisers such as Vanguard and Blackrock offer these ETFs

119.   By virtue of the similarities in their respective holdings and market capitalizations, the Russell 1000 and the Growth Stock Fund share similar investment characteristics. This makes the Russell 1000 a meaningful comparator.

## IX.    THE MID CAP FUND AND ITS COMPARATORS AND BENCHMARK

**The T. Rowe Price Mid Cap Fund**

120.    The Mid Cap Fund is an actively mid-cap growth fund. Its aim is to seek long-term capital appreciation.

121.    The Mid Cap Fund pursues its aim by investing primarily in a diverse portfolio of mid-sized companies with growth characteristics. Currently, approximately 69% of the Mid Cap Fund's portfolio is invested in mid-cap stocks.

122.    The Mid Cap Fund identifies the Russell Mid Cap as its benchmark.

123.    The Mid Cap Fund's potential reward is that it will generate positive investment returns that outperform the Russell Mid Cap.

124.    The Mid Cap Fund's principal risks are related to (1) market risk, (2) issuer risk, (3) the risks of investing in growth-oriented stocks, and (4) the risks of investing in mid-cap stocks.

125.    By investing a significant portion of its assets in stocks, including growth-oriented stocks and mid-cap stocks, the Mid Cap Fund is considered as having a very aggressive risk profile.

126.    The Mid Cap Fund is not the only mid-cap growth fund on the market with the same mix of aims, risks, and potential rewards as described above. As set forth below, numerous substantially similar mid-cap growth funds have existed throughout the Class Period.

**Comparator 1: Federated Hermes MDT Mid Cap Growth Fund**

127.    The Federated Hermes MDT Mid Cap Growth Fund (the "Federated Fund") has similar aims, risks, and potential rewards to those of the Mid Cap Fund.

128.    Like the Mid Cap Fund, the Federated Fund is an actively managed mid-cap growth fund.

129.    The Federated Fund's aim is to seek long-term capital appreciation.

130.    Like the Mid Cap Fund, the Federated Fund pursues its aim by investing primarily in the common stock of mid-sized companies with growth characteristics.

131.    Like the Mid Cap Fund, the Federated Fund identifies the Russell Mid Cap as one of its benchmarks.

132.    Currently, approximately 79% of the Federated Hermes Fund's portfolio is invested in mid-cap stocks.

133.    The Federated Fund's potential rewards are that the fund will generate positive investment returns that outperform the Russell Mid Cap.

134.    The Federated Fund's principal risks are related to (1) market risk, (2) issuer risk, (3) the risks of investing in growth-oriented stocks, and (4) the risks of investing in mid-cap stocks.

135.    By investing a significant portion of its assets in stocks, including growth-oriented stocks and mid-cap stocks, the Federated Fund, like the Mid Cap Fund, is considered as having a very aggressive risk profile.

136.    The aims, risks, and potential rewards of the Federated Fund are similar to those of the Mid Cap Fund given the similarities in the two funds' investment strategies,

26

the types of stocks the two funds own, and their very aggressive risk profiles. Moreover, both funds are actively managed investment options that seek to outperform the same benchmark, the Russell Mid Cap.

137. These facts make the Federated Fund a meaningful comparator to the Mid Cap Fund.

**Comparator 2: Janus Henderson Enterprise Fund**

138. The Janus Henderson Enterprise Fund (the "Janus Fund") has similar aims, risks, and potential rewards to those of the Mid Cap Fund.

139. Like the Mid Cap Fund, the Janus Fund is an actively managed mid-cap growth fund. Its aim is to seek long-term capital growth.

140. The Janus Fund pursues its aim by investing primarily in the common stock of mid-sized companies with growth characteristics. Currently, approximately 58% of the Janus Fund's portfolio is invested in mid-cap stocks.

141. Like the Mid Cap Fund, the Janus Fund identifies the Russell Mid Cap as one of its benchmarks.

142. The Janus Fund's potential rewards are that the fund will generate positive investment returns that outperform its Russell Mid Cap.

143. The Janus Fund's principal risks are related to (1) market risk, (2) issuer risk, (3) the risks of investing in growth-oriented stocks, and (4) the risk of investing in mid-cap stocks.

144. By investing a significant portion of its assets in stocks, including growth-oriented stocks and mid-cap stocks, the Janus Fund is considered as having a very aggressive risk profile.

145. The aims, risks, and potential rewards of the Janus Fund are similar to those of the Mid Cap Fund given the similarities in the two funds' investment strategies, the types of stocks the two funds own, and their very aggressive risk profiles. Moreover, both funds are actively managed investment options that seek to outperform the same benchmark, the Russell Mid Cap.

146. These facts make the Janus Fund a meaningful comparator to the Mid Cap Fund.

**Comparator 3: Baron Focused Growth Fund**

147. The Baron Focused Growth Fund (the "Baron Fund") has similar aims, risks, and potential rewards to those of the Mid Cap Fund.

148. Like the Mid Cap Fund, the Baron Fund is an actively managed mid-cap growth fund. Its aim is to seek long-term capital appreciation.

149. The Baron Fund pursues its aim by investing primarily in the common stock of small- and mid-sized companies with growth characteristics. Currently, approximately 48% of the Baron Fund's portfolio is invested in mid-cap stocks.

150. The Baron Fund's potential rewards are that the fund will generate positive investment returns that outperform its stated benchmark, the Russell 2500 Growth Index.[3]

---

[3] The Russell 2500 Growth Index measures the performance of the small to mid-cap growth segment of the US equity universe. It includes those Russell 2500 companies with

151. The Baron Fund's principal risks are related to (1) market risk, (2) issuer risk, (3) the risks of investing in growth-oriented stocks, and (4) risks of investing in mid-cap stocks.

152. By investing a significant portion of its assets in stocks, including growth-oriented stocks and mid-cap stocks, the Baron Fund, like the Mid Cap Fund, is considered as having a very aggressive risk profile.

153. The aims, risks, and potential rewards of the Baron Fund are similar to those of the Mid Cap Fund given the similarities in the two funds' investment strategies, the types of stocks the two funds own, and their very aggressive risk profiles.

154. These facts make the Baron Fund a meaningful comparator to the Mid Cap Fund.

**Comparator 4: Fidelity Mid Cap Growth Index Fund**

155. The Fidelity Mid Cap Growth Index Fund (the "Fidelity Fund") has similar aims, risks, and potential rewards to those of the Mid Cap Fund.

156. The Fidelity Fund is a passively managed index fund that seeks to provide investment results that correspond to the total return of stocks of mid-capitalization companies with growth characteristics. The fund normally invests at least 80% of assets in securities included in the Russell Mid Cap.

---

relatively higher price-to-book ratios, higher I/B/E/S forecast medium term (2 year) growth and higher sales per share historical growth (5 years). The Russell 2500 Growth Index is constructed to provide a comprehensive and unbiased barometer of the small to mid-cap growth market.

157. Like the Mid Cap Fund, the Fidelity Fund identifies the Russell Mid Cap as one of its benchmarks. Currently, approximately 77% of the Fidelity Mid Cap Fund's portfolio is invested in mid-cap stocks.

158. The Fidelity Fund's potential rewards are that the fund will generate positive investment returns in line with the Russell Mid Cap. The Fidelity Fund's principal risks are related to (1) market risk, (2) issuer risk, (3) the risks of investing in growth-oriented stocks, and (4) the risks of investing in mid-cap stocks.

159. By investing a significant portion of its assets in stocks, including growth-oriented stocks and mid-cap stocks, the Fidelity Fund, like the Mid Cap Fund, is considered as having a very aggressive risk profile.

160. The aims, risks, and potential rewards of the Fidelity Fund are similar to those of the Mid Cap Fund given the similarities in the two funds' investment strategies, the types of stocks the two funds own, and their very aggressive risk profiles.

161. The most telling difference between the Mid Cap Fund and the Fidelity Fund relates to their fees. As shown in the table below, the fees of the Mid Cap Fund are more than 12-times the fees of the Fidelity Fund, yet, as illustrated in Section IX below, the Fidelity Fund has significantly superior investment performance.

| Fund Name | Fees |
| --- | --- |
| T. Rowe Price Mid Cap Growth Fund Z (TRQZX) | 0.61% |
| Fidelity Mid Cap Growth Index Fund | 0.05% |

162. The Fidelity Fund tracks the performance of the Russell Mid Cap and for a low fee. For a prudent fiduciary fed up with the high fees and poor performance of the

actively managed Mid Cap Fund and wants to passively track the performance of the Russell Mid Cap, the Fidelity Fund is a meaningful comparator.

**Comparator 5: Russell Mid Cap Growth Index**

163. T. Rowe Price—the investment adviser and the entity most knowledgeable about the Mid Cap Fund—discloses to the investing public that the Russell Mid Cap is a "strategy benchmark" for the Mid Cap Fund (i.e., an index that closely aligns to the fund's investment strategy).

164. Therefore, T. Rowe Price necessarily concludes that the Mid Cap Fund and the Russell Mid Cap share similar investment characteristics; it encourages investors to compare the performance of the Mid Cap Fund to that of the Russell Mid Cap.

165. The Russell Mid Cap measures the performance of the mid-cap growth segment of the U.S. stock market. It includes those Russell Mid Cap companies that are similar to the companies included in the Mid Cap Fund: those with medium capitalizations, relatively higher price-to-book ratios, higher forecast medium-term growth, and higher sales-per-share historical growth (i.e., growth companies).

166. Investors can own the Russell Mid Cap by investing in exchange-traded funds (ETFs) offered by reputable investment advisers such as BlackRock. These ETFs own all or substantially all stocks represented in the Russell Mid Cap.

167. By virtue of the similarities in their respective holdings and market capitalizations, the Russell Mid Cap and the Mid Cap Fund share similar investment characteristics.

168. This makes the Russell Mid Cap a meaningful comparator.

## X.     THE T. ROWE PRICE FUNDS UNDERPERFORMED THEIR BENCHMARKS AND COMPARATOR FUNDS FOR OVER FIVE YEARS

169.    Poor investment performance can seriously diminish a participant's retirement savings. An investment option that underperforms by a mere half a percent has a material impact on a participant's retirement savings.

170.    For example, as explained above, a 35-year-old participant with $100,000 in retirement savings will see that $100,000 grow to $761,000 by retirement age at 65, assuming a 7% return and no further contributions or withdrawals. However, that same $100,000 with a lower investment return of 6.50% will grow to only $661,000, or $100,000 less.

171.    For a prudent fiduciary, investment options that, on average, underperform their benchmarks over three-year or five-year periods are generally candidates for removal. Such guidelines are often outlined in a plan's investment policy statement.

172.    A prudent fiduciary would have realized that the T. Rowe Price Funds did not warrant the fees that they were charging for active management. Even though the Growth Stock Fund failed to beat its Russell 1000 benchmark, its fees were nearly 6 times the Vanguard Growth Fund's fees. Similarly, while the Mid Cap Fund failed to beat its Russell 1000 benchmark, its fees were over 12 times those charged by the Fidelity Fund.

173.    The severe underperformance illustrated in the tables below raises a plausible inference that the T. Rowe Price Funds could not be expected to provide higher investment returns and therefore were not prudent investments. Therefore, their retention in the Plan was the product of an imprudent process.

32

### 1.  Growth Stock Fund Underperformance

174.  Had the RBC Defendants fulfilled their duty with the care and skill of a prudent fiduciary, they would have removed the Growth Stock Fund by the start of the Class Period. Indeed, by December 31, 2020, the Growth Stock Fund had underperformed its benchmark, the Russell 1000 over the preceding one-year, three-year, five-year, and ten-year periods.

175.  **Table 1.a** below demonstrates the underperformance of the Growth Stock Fund compared to the Russell 1000 and to the Comparator Funds for the five-year period from January 1, 2016, through December 31, 2020. Underperformance up to 5.0% is reflected in red, while underperformance greater than 5.0% is reflected in maroon. By late 2020, Defendants should have recognized that the Growth Stock Fund was a terrible encumbrance to the Plan and should be removed.

176.  On average, during the period from January 1, 2016, through December 31, 2020, the assets of the Growth Fund averaged around $293,000,000.

177.  **Table 1.a** below compares the investment growth of $293,000,000 invested in the Growth Stock Fund to the growth of $293,000,000 invested in the Russell 1000 and each of the Comparator Funds from January 1, 2016, through December 31, 2020. As the Table shows, in just that 5-year stretch the Growth Stock Fund lost the Plan upward of $181,300,000 in retirement savings.

**Table 1.a**
**January 1, 2016—December 31, 2020**

| Fund Name | Cumulative Performance | Annualized Performance | Growth of $293 Million |
|---|---|---|---|
| T. Rowe Price Growth Stock Fund | 142.06% | 19.34% | $709.2 million |
| Russell 1000 Growth TR | 159.38% | 21.00% | $760.0 million |
| *+/- Growth Stock* | *-17.32%* | *-1.66%* | *-$50.8 million* |
| Fidelity Blue Chip Growth K (FBGKX) | 203.94% | 24.90% | $890.5 million |
| *+/- Growth Stock* | *-61.88%* | *-5.56%* | *-$181.3 million* |
| Alger Focus Equity Y (ALGYX) | 170.70% | 22.04% | $793.1 million |
| *+/- Growth Stock* | *-28.64%* | *-2.70%* | *-$83.9 million* |
| Federated Hermes MDT Large Cap Growth R6 (QRLGX) | 148.17% | 19.94% | $727.1 million |
| *+/- Growth Stock* | *-6.11%* | *-0.60%* | *-$17.9 million* |
| The Vanguard Russell 1000 Growth Index Fund | 159.58% | 21.02% | $760.6 million |
| *+/- Growth Stock* | *-17.52%* | *-1.68%* | *-$51.4 million* |

178.    When viewed from a participant's perspective, annualized underperformance of 1.60% relative to the Russell 1000 is not insignificant. For a 35-year-old participant with $100,000 savings this 5-year annualized underperformance is difficult to make up and, if unabated, could rob the participant of $276,000 of retirement savings over the course of their working years, assuming no new contributions or withdrawals.

179.    Yet the RBC Defendants failed to remove the Growth Stock Fund. And the Growth Stock Fund performed even worse throughout the Class Period.

180.    **Table 1.b** below illustrates the continued underperformance of the Growth Stock Fund from January 1, 2021, through February 28, 2026, on an annual and cumulative basis relative to the Russell 1000 and the Comparator Funds. Underperformance up to 5.0%

34

is reflected in red, while underperformance greater than 5.0% is reflected in maroon. Though the Growth Stock Fund outperformed the Russell 1000 and certain Comparator Funds in one year, that outperformance was overshadowed by the four or five years in which the Growth Stock Fund underperformed the Russell 1000 and the Comparator Funds. The Growth Stock Fund underperformed the Russell 1000 annually in five of the six years and cumulatively by over 44%.

**Table 1.b**
**January 1, 2021—February 28, 2026**

| Fund | Annualized Performance | | | | | | Cumulative Compounded Performance |
|---|---|---|---|---|---|---|---|
| | **2021** | **2022** | **2023** | **2024** | **2025** | **YTD** | |
| T. Rowe Price Growth Stock Fund[4] | 19.47% | -39.53% | 46.78% | 30.17% | 15.87% | -6.19% | 50.04% |
| Russell 1000 Growth TR | 27.60% | -29.14% | 42.68% | 33.36% | 18.56% | -4.82% | 94.14% |
| *+/- Growth Stock* | *-8.13%* | *-10.39%* | *4.10%* | *-3.19%* | *-2.69%* | *-1.37%* | *-44.10%* |
| Fidelity Blue Chip Growth Fund K (FBGKX) | 22.81% | -38.40% | 55.76% | 39.80% | 19.99% | -2.38% | 92.93% |
| *+/- Growth Stock* | *-3.34%* | *-1.13%* | *-8.98%* | *-9.63%* | *-4.12%* | *-3.81%* | *-42.89%* |
| Alger Focus Equity Fund Y (ALGYX) | 20.03% | -35.72% | 44.68% | 52.28% | 40.42% | -5.01% | 126.76% |
| *+/- Growth Stock* | *-0.56%* | *-3.81%* | *2.10%* | *-22.11%* | *-24.55%* | *-1.18%* | *-76.72%* |
| Federated Hermes MDT Large Cap Growth Fund R6 (QRLGX) | 30.38% | -24.69% | 39.62% | 36.26% | 18.48% | -4.27% | 111.86% |
| *+/- Growth Stock* | *-10.91%* | *-14.84%* | *7.16%* | *-6.09%* | *-2.61%* | *-1.92%* | *-61.82%* |
| The Vanguard Russell 1000 Growth Index Fund | 27.61% | -29.14% | 42.74% | 33.35% | 18.56% | -4.81% | 94.25% |
| *+/- Growth Stock* | *-8.14%* | *-10.39%* | *4.04%* | *-3.18%* | *-2.69%* | *-1.38%* | *-44.21%* |

---

[4] In and around 2022, the Plan switched its offering of the T. Rowe Price Growth Stock Collective Investment Trust from the Class C shares to the Class E shares. The investment teams, aims, risks, potential rewards, and portfolio holdings of each are substantially identical, the only meaningful difference being in fees. From the perspective of the Plan, the conversion from the Class C shares to the Class E reflected a continuation of the same investment option. The annual and cumulative performance calculations shown in **Tables 1.b** and **1.c** use the Class C performance data for 2021 and the Class E data for 2022 through the present.

181.    Together, **Tables 1.a** and **1.b** capture the depth and the breadth of the Growth Stock Fund's underperformance relative to the Russell 1000 that have persisted in the Plan for more than ten years.

182.    All the data presented in each of the above **Tables 1.a** and **1.b** was available in real time to the RBC Defendants throughout the Class Period.

183.    On average, during the period from January 1, 2021, through February 28, 2026, the assets of the Growth Stock Fund were approximately $464,000,000.

184.    **Table 1.c** below compares the investment growth of $464,000,000 invested in the Growth Stock Fund to the growth of $464,000,000 invested in each of the Comparator Funds from January 1, 2021, through February 28, 2026. Underperformance up to 5.0% is reflected in red, while underperformance greater than 5.0% is reflected in maroon.

185.    **As Table 1.c** shows, participants would have substantially more dollars in retirement savings had Defendants replaced the Growth Stock Fund with any of the Comparator Funds.

**Table 1.c**
**January 1, 2021—February 28, 2026**

| Fund Name | Cumulative Performance | Annualized Performance | Growth of $464 Million |
|---|---|---|---|
| T. Rowe Price Growth Stock Fund | 50.04% | 8.17% | $696.2 million |
| Russell 1000 Growth TR | 94.14% | 13.70% | $900.8 million |
| *+/- Growth Stock* | *-44.10%* | *-5.53%* | *-$204.6 million* |
| Fidelity Blue Chip Growth Fund K (FBGKX) | 92.93% | 13.56% | $895.2 million |
| *+/- Growth Stock* | *-42.89%* | *-5.39%* | *-$199.0 million* |
| Alger Focus Equity Fund Y (ALGYX) | 126.76% | 17.17% | $1.052 billion |
| *+/- Growth Stock* | *-76.72%* | *-9.00%* | *-$355.8 million* |
| Federated Hermes MDT Large Cap Growth Fund R6 (QRLGX) | 111.86% | 15.64% | $983 million |
| *+/- Growth Stock* | *-61.82%* | *-7.47%* | *-$286.8 million* |
| The Vanguard Russell 1000 Growth Index Fund | 94.25% | 13.71% | $901.3 million |
| *+/- Growth Stock* | *-44.21%* | *-5.54%* | *-$205.1 million* |

186.    The Comparator Funds listed in each of the above tables are managed by reputable investment advisers with significant assets under management and are available to all large retirement plans, including RBC's Plan. RBC would not have had to scour the market to find them.

187.    Defendants had a fiduciary duty to remove the Growth Stock Fund within a reasonable time after it manifested poor performance. Yet they retained the Growth Stock Fund year after year, even though it failed to beat its benchmark, the Russell 1000, and the Comparator Funds, spanning a period of over 10 years.

38

### 2.    Mid Cap Fund Underperformance

188.    **Table 2.a** below demonstrates the underperformance of the Mid Cap Fund compared to the Russell Mid Cap and Comparator Funds for the five-year period from January 1, 2016, through December 31, 2020. Underperformance up to 5.0% is reflected in red, while underperformance greater than 5.0% is reflected in maroon. By late 2020, Defendants should have recognized that the Mid Cap Fund was a terrible encumbrance to the Plan and should be removed.

189.    On average, during the period from January 1, 2016, through December 31, 2020, the assets of the Mid Cap Fund averaged around $128,000,000.

190.    **Table 2.a** below shows the investment growth of $128,000,000 invested in the Mid Cap Fund to the growth of $128,000,000 invested in the Russell Mid Cap and each of its Comparator Funds from January 1, 2016, through December 31, 2020. As the Table shows, the Mid Cap Fund lost the Plan between $22,100,000 and $220,500,000 in retirement savings.

**Table 2.a**
**January 1, 2016—December 31, 2020**

| Fund Name | Cumulative Performance | Annualized Performance | Growth of $128 Million |
|---|---|---|---|
| T. Rowe Price Mid Cap Growth Fund Z (TRQZX) | 113.54% | 16.38% | $273.3 million |
| Russell Mid Cap Growth Index | 135.22% | 18.66% | $301.1 million |
| *+/- Mid Cap Fund* | *-21.68%* | *-2.28%* | *-$27.8 million* |
| Baron Focused Growth Fund R6 (BFGUX) | 285.75% | 31.00% | $493.8 million |
| *+/- Mid Cap Fund* | *-172.21%* | *-14.62%* | *-$220.5 million* |
| Federated Hermes MDT Mid Cap Growth Fund R6 (FGSKX) | 131.21% | 18.25% | $296 million |
| *+/- Mid Cap Fund* | *-17.67%* | *-1.87%* | *-$22.7 million* |
| Janus Henderson VIT Enterprise Fund Instl (JAAGX) | 130.79% | 18.21% | $295.4 million |
| *+/- Mid Cap Fund* | *-17.25%* | *-1.83%* | *-$22.1 million* |
| Fidelity Mid Cap Growth Index Fund (FMDGX)[5] | NA | NA | NA |
| *+/- Mid Cap Fund* | *NA* | *NA* | *NA* |

191. **Table 2.b**, below, illustrates the underperformance of the Mid Cap Fund from January 1, 2021, through February 28, 2026, on an annual and cumulative basis relative to the Russell Mid Cap and the Comparator Funds. Underperformance up to 5.0% is reflected in red, while underperformance greater than 5.0% is reflected in maroon. Though the Mid Cap Fund outperformed the Russell Mid Cap and certain Comparator Funds in some years, that outperformance was overshadowed by the three or four years in

---

[5] The Fidelity Mid Cap Growth Index Fund was not created until July 11, 2019. It would have been available to the Plan as an investment option before December 31, 2020. Defendants could have reasonably inferred that the Fidelity Mid Cap Index Fund would produce returns in line with the total return of the mid-cap growth sector of the U.S. market, i.e., the Russell Mid Cap Growth Index.

which the Mid Cap Fund underperformed the Russell Mid Cap and the Comparator Funds.

The Mid Cap Fund severely underperformed the Russell Mid Cap in three of the 5+ years

and cumulatively by over 8%.

**Table 2.b**
**January 1, 2021—February 28, 2026**

| Fund | Annualized Performance | | | | | | Cumulative Compounded Performance |
|---|---|---|---|---|---|---|---|
| | 2021 | 2022 | 2023 | 2024 | 2025 | YTD | |
| T. Rowe Price Mid Cap Growth Fund Z (TRQZX) | 15.89% | -21.92% | 21.02% | 10.22% | 4.41% | 2.96% | 29.74% |
| Russell Mid Cap Growth Index | 12.73% | -26.72% | 25.87% | 22.10% | 8.66% | -0.09% | 37.83% |
| +/- Mid Cap Fund | 3.16% | 4.80% | -4.85% | -11.88% | -4.25% | 3.05% | -8.09% |
| Baron Focused Growth Fund R6 (BFGUX) | 19.15% | -28.11% | 27.75% | 29.85% | 22.26% | 0.59% | 74.75% |
| +/- Mid Cap Fund | -3.26% | 6.19% | -6.73% | -19.63% | -17.85% | 2.37% | -45.01% |
| Federated Hermes MDT Mid Cap Growth Fund R6 (FGSKX) | 22.90% | -24.34% | 27.45% | 33.44% | 9.88% | -0.49% | 72.90% |
| +/- Mid Cap Fund | -7.01% | 2.42% | -6.43% | -23.22% | -5.47% | 3.45% | -43.16% |
| Janus Henderson VIT Enterprise Fund Instl (JAAGX) | 16.83% | -15.94% | 18.07% | 15.61% | 7.67% | -0.13% | 44.14% |
| +/- Mid Cap Fund | -0.94% | -5.98% | 2.95% | -5.39% | -3.26% | 3.09% | -14.40% |
| Fidelity Mid Cap Growth Index Fund (FMDGX) | 12.71% | -26.67% | 25.79% | 22.02% | 8.62% | -0.09% | 37.68% |
| +/- Mid Cap Fund | 3.18% | 4.75% | -4.77% | -11.80% | -4.21% | 3.05% | -7.94% |

192.    Together, **Tables 2.a** and **2.b** capture the depth and the breadth of the Mid Cap Fund's underperformance relative to meaningful comparators that has persisted for more than fifteen years.

193.    All the data presented in each of the above **Tables 2.a** and **2.b** was available in real time to the RBC Defendants throughout the Class Period.

194.    Defendants' failure to remove the Mid Cap Fund cost Plan participants millions of dollars in retirement savings.

195.    On average, during the period from January 1, 2021, through February 28, 2026, the assets of the Mid Cap Fund were approximately $173,000,000.

196.    **Table 2.c** below compares the investment growth of $173,000,000 invested in the Mid Cap Fund to the growth of $173,000,000 invested in each of the Comparator Funds from January 1, 2021, through February 28, 2026. Underperformance up to 5.0% is reflected in red, while underperformance greater than 5.0% is reflected in maroon.

197.    As **Table 2.c** shows, Participants would have substantially more dollars in retirement savings had Defendants replaced the Mid Cap Fund with any of the Comparator Funds.

**Table 2.c**
**January 1, 2021—February 28, 2026**

| Fund Name | Cumulative Performance | Annualized Performance | Growth of $173 Million |
|---|---|---|---|
| T. Rowe Price Mid Cap Growth Fund Z (TRQZX) | 29.74% | 5.17% | $224.5 million |
| Russell Mid Cap Growth Index | 37.83% | 6.41% | $238.4 million |
| *+/- Mid Cap Fund* | *-8.09%* | *-1.24%* | *-$13.9 million* |
| Baron Focused Growth Fund R6 (BFGUX) | 74.75% | 11.41% | $302.3 million |
| *+/- Mid Cap Fund* | *-45.01%* | *-6.24%* | *-$77.8 million* |
| Federated Hermes MDT Mid Cap Growth Fund R6 (FGSKX) | 72.90% | 11.18% | $299.1 million |
| *+/- Mid Cap Fund* | *-43.16%* | *-6.01%* | *-$74.6 million* |
| Janus Henderson VIT Enterprise Fund Instl (JAAGX) | 44.14% | 7.33% | $249.4 million |
| *+/- Mid Cap Fund* | *-14.40%* | *-2.16%* | *-$24.9 million* |
| Fidelity Mid Cap Growth Index Fund (FMDGX) | 37.68% | 6.38% | $238.2 million |
| *+/- Mid Cap Fund* | *-7.94%* | *-1.21%* | *-$13.7 million* |

198. The Comparator Funds listed in each of the above tables are managed by reputable investment advisers with significant assets under management and are available to all large retirement plans, including RBC's Plan. RBC would not have had to scour the market to find them.

199. Defendants owed a fiduciary duty to remove the Mid Cap Fund within a reasonable time after it manifested poor performance. Yet they retained the Mid Cap Fund year after year.

43

## XI.   CLASS ACTION ALLEGATIONS

200.   29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. § 1109(a). Plaintiff Daniel Rico brings this suit in a representative capacity on behalf of the Plan and its participants and beneficiaries pursuant to 29 U.S.C. § 1132(a), seeking appropriate Plan-wide relief under 29 U.S.C. § 1109 to protect the interests of the Plan.

201.   By acting in this representative capacity and to enhance the due process protections of unnamed participants and beneficiaries of the Plan, and as an alternative to a direct individual action on behalf of the Plan under 29 U.S.C. § 1132(a)(2), Plaintiff may seek to certify this action as a class action on behalf of participants and beneficiaries of the Plan. Specifically, Plaintiff may seek to certify, and be appointed as representative of, the following class:

> All participants and beneficiaries of the Plan who invested in one or more of the T. Rowe Price Funds from January 1, 2021, through the date of judgment, excluding the RBC Defendants, any of their directors, and any officers or employees of the RBC Defendants with responsibility for the Plan's investment or administrative function.

202.   This action meets the requirements of Federal Rule of Civil Procedure 23 and is certifiable as a class action for the following reasons:

a.   The Class includes thousands of members and is so large that joinder of all its members is impracticable.

b.    There are numerous questions of law and fact common to this Class because the RBC Defendants owed the same fiduciary duties to the Plan and to all Plan participants and beneficiaries. They took a common course of actions and omissions as alleged herein as to the Plan, and not as to any individual participant, that affected all Class members through their participation in the Plan in the same way. Thus, questions of law and fact common to the Class include, without limitation, the following: (i) whether each of the RBC Defendants are fiduciaries liable for the remedies provided by 29 U.S.C. § 1109(a); (ii) whether the fiduciaries of the Plan breached their fiduciary duties to the Plan by employing an imprudent process for monitoring and evaluating Plan investment options; (iii) whether the fiduciaries of the Plan breached their fiduciary duties to the Plan by retaining an imprudent investment for an unreasonable amount of time; (iv) whether Plaintiff's claims of an imprudent process require similar inquiries and proof of the claims, and therefore implicate the same set of concerns, for all proposed members of the Class; (v) what losses to the Plan resulted from each breach of fiduciary duty; and (vi) what Plan-wide equitable and other relief the Court should impose in light of the RBC Defendants' breach of duties.

c.    Plaintiff's claims are typical of the claims of the Class because Plaintiff was a Plan participant who invested in the T. Rowe Price Funds during the Class Period, and all participants in the Plan who invested in the T. Rowe Price Funds were harmed by the RBC Defendants' misconduct.

45

d.      Plaintiff is an adequate representative of the Class because he participated in the Plan during the Class Period, invested in the T. Rowe Price Funds, has no interest that conflicts with the Class, is committed to the vigorous representation of the Class, and has engaged experienced and competent attorneys to represent the Class.

e.      There are no substantial individualized questions of law or fact among Class members on the merits of this Action.

203.    Prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the RBC Defendants in respect to the discharge of their fiduciary duties to the Plan and their personal liability to the Plan under 29 U.S.C. § 1109(a). Moreover, adjudications by individual participants and beneficiaries regarding the alleged breaches of fiduciary duties, and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries not parties to the adjudication or would substantially impair or impede those participants' and beneficiaries' ability to protect their interests. Therefore, this action should be certified as a class action under Rule 23(b)(1)(A) or (B).

204.    Additionally, or in the alternative, certification under Rule 23(b)(2) may be appropriate because the RBC Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole. Plaintiff may seek reformation of the Plan to include only prudent investments, which will benefit them and other Plan participants.

205.    Additionally, or alternatively, this action may be certified as to particular issues under Rule 23(c)(4), including but not limited to the RBC Defendants' liability to the Class for their allegedly imprudent conduct.

206.    Plaintiff's counsel will fairly and adequately represent the interests of the Class and is best able to represent the interests of the Class under Rule 23(g).

## COUNT I

**Breach of Duty of Prudence by Failing to Remove Imprudent Investments from the Plan Within a Reasonable Time**

**(Violation of 29 U.S.C. § 1104)**
**(Against All RBC Defendants)**

207.    All allegations set forth in the Complaint are realleged and incorporated herein by reference.

208.    At all relevant times during the Class Period, the RBC Defendants acted as fiduciaries within the meaning of 29 U.S.C. § 1002(21)(A) by exercising authority and control with respect to the management of the Plan and its assets, and/or by rendering investment advice or by having authority or responsibility to render investment advice to the Plan, and/or were designated in the governing Plan documents as a named fiduciary within the meaning of 29 U.S.C. § 1102(a).

209.    29 U.S.C. § 1104(a)(1)(B) requires a plan fiduciary to act with the "care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

210.    Thus, under ERISA, the RBC Defendants are responsible for evaluating and monitoring the Plan's investments on an ongoing basis, eliminating imprudent investments, and taking all necessary steps to ensure the Plan's assets are invested prudently.

211.    The RBC Defendants breached their fiduciary duties through an imprudent process for investigating, evaluating, and monitoring investments. The faulty process resulted in a Plan which included funds that suffered poor performance and substantial redemptions and charged relatively higher fees for well over a decade.

212.    This process included the retention of the following T. Rowe Price Funds despite sustained poor relative investment performance:

a.      **T. Rowe Price Growth Stock Fund**. RBC Defendants failed to remove the T. Rowe Price Growth Stock Fund within a reasonable time despite historical underperformance relative to the Russell 1000 Growth Index and Comparator Funds.

b.      **T. Rowe Price Mid Cap Growth Fund**. RBC Defendants failed to remove the T. Rowe Price Mid Cap Growth Fund within a reasonable time despite historical underperformance relative to the Russell Mid Cap and Comparator Funds.

213.    By failing to replace the T. Rowe Price Funds with (a) better-performing actively managed investment options, or (b) with cheaper and better performing passively managed investment options (such as the Vanguard or Fidelity funds identified above), the RBC Defendants failed to discharge their duties with the care, skill, prudence, and

diligence that a prudent fiduciary acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

214. The RBC Defendants' breach of fiduciary duty has substantially impaired the Plan's use, its value, and its investment performance for all Class members.

215. As a direct and proximate result of the RBC Defendants' breaches of fiduciary duty, the Plan has suffered millions of dollars of damages which continue to accrue and for which the RBC Defendants are jointly and severally liable pursuant to 29 U.S.C. §§ 1132(a)(2) and 1109(a).

216. Each of the RBC Defendants is liable to make good to the Plan any losses resulting from the aforementioned breaches and to restore to the Plan any profits resulting from the breaches of fiduciary duties alleged in this Count. The RBC Defendants are also subject to other Plan-wide equitable or remedial relief as appropriate, including an injunction and the removal of fiduciaries.

217. Each RBC Defendant also participated in the breach of the other RBC Defendants, knowing that such acts were a breach, and enabled the other RBC Defendants to commit a breach by failing to lawfully discharge their own fiduciary duties. Each RBC Defendant knew of the breach by the other RBC Defendants yet failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each RBC Defendant is liable for any losses caused by the breach of its co-fiduciary duties under 29 U.S.C. § 1105(a).

## COUNT II

### Failure to Monitor

### (Against All RBC Defendants)

218. All allegations set forth in paragraphs 1 through 206 the of Complaint are realleged and incorporated herein by reference.

219. The RBC Defendants had a duty to monitor the performance of each party to whom they delegated any fiduciary responsibilities. A monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment and holding of Plan assets, and must take prompt and effective action to protect the Plan and participants when they are not.

220. To the extent any RBC Defendants' fiduciary responsibilities were delegated to another fiduciary, the RBC Defendants' monitoring duty included an obligation to ensure that any delegated tasks were being performed prudently, loyally, and in compliance with governing Plan documents.

221. The RBC Defendants breached their fiduciary monitoring duties by, among other things:

    a.    failing to monitor their appointees, to evaluate their performance, or to have a system in place for doing so, and standing idly by as the Plan suffered enormous losses as a result of their appointees' actions and omissions in violation of ERISA;

    b.    failing to monitor their appointees' fiduciary process;

c.    failing to ensure that the monitored fiduciaries had a prudent process in place for evaluating and ensuring that investment options were prudent; and

d.    failing to remove appointees whose performance was inadequate in that they continued to allow investment options that were imprudent and otherwise violated ERISA to remain in the Plan, to the detriment of Plan participants' retirement savings.

222.    Each fiduciary who delegated its fiduciary responsibilities likewise breached its fiduciary monitoring duty by, among other things:

a.    failing to monitor their appointees, to evaluate their performance, or to have a system in place for doing so, and standing idly by as the Plan suffered enormous losses as a result of their appointees' actions and omissions in violation of ERISA;

b.    failing to monitor their appointees' fiduciary process;

c.    failing to ensure that the monitored fiduciaries had a prudent process in place for evaluating and ensuring that investment options were prudent; and

d.    failing to remove appointees whose performance was inadequate in that they continued to allow investment options that were imprudent and otherwise violated ERISA to remain in the Plan, to the detriment of Plan participants' retirement savings.

223.   As a direct result of these breaches of the fiduciary duty to monitor, the Plan suffered substantial losses. Had RBC and the other delegating fiduciaries discharged their fiduciary monitoring duties, the Plan would not have suffered these losses.

## PRAYER FOR RELIEF

For these reasons, Plaintiff, on behalf of the RBC USA Holdco Corporation Savings Investment Plan and all similarly situated Plan participants and beneficiaries, respectfully requests that the Court:

i.     find and adjudge that the RBC Defendants have breached their fiduciary duties, as described above;

ii.    find and adjudge that the RBC Defendants are personally liable to make good to the Plan any losses to the Plan resulting from each breach of fiduciary duty, and to otherwise restore the Plan to the position it would have occupied but for the breaches of fiduciary duty;

iii.   order the RBC Defendants to make good to the Plan the losses resulting from each breach of fiduciary duty and to restore to the Plan any profits resulting from each breach of fiduciary duty;

iv.    find and adjudge that the RBC Defendants are liable to the Plan for appropriate Plan-wide equitable relief, including but not limited to restitution and disgorgement;

v.     determine the method by which Plan losses under 29 U.S.C. § 1109(a) should be calculated;

vi.    order the RBC Defendants to provide all accountings necessary to determine the amounts Defendants must make good to the Plan under 29 U.S.C. § 1109(a);

vii.    impose surcharge against the RBC Defendants and in favor of the Plan all amounts involved in any transactions or fiduciary breaches that were in violation of ERISA;

viii.    reform the Plan to include only prudent investments;

ix.    certify the Class, appoint the Plaintiff as a class representative, appoint Sanford Heisler Sharp McKnight, LLP as Class Counsel, and appoint Charles Field and Leigh Anne St. Charles as lead counsel for the Class;

x.    award to the Plaintiff and the Class their attorney's fees and costs under 29 U.S.C. § 1132(g)(1) and the common fund doctrine;

xi.    order the RBC Defendants to pay interest to the extent allowed by law; and

xii.    grant such other equitable or remedial relief as the Court deems appropriate.

Dated: March 24, 2026                    Respectfully submitted,

*/s/ Susan M. Coler*
Susan M. Coler, MN Bar No. 0217621
**HALUNEN LAW**
1650 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099

Charles H. Field, California Bar No. 189817*
**SANFORD HEISLER SHARP MCKNIGHT, LLP**
7911 Herschel Avenue, Suite 300
La Jolla, CA, 92037
Telephone: (619) 577-4252
Facsimile: (619) 577-4250
cfield@sanfordheisler.com

Leigh Anne St. Charles, TN Bar No. 036945*
**SANFORD HEISLER SHARP MCKNIGHT, LLP**
611 Commerce Street, Suite 3100
Nashville, TN 37203
Phone: (615) 434-7000
Facsimile: (615) 434-7020
lstcharles@sanfordheisler.com

Don Bivens, AZ Bar No. 005134*
Maxwell K. Weiss, New York Bar No. 5509823*
**DON BIVENS, PLCC**
15169 N. Scottsdale Road, Suite 205
Scottsdale, AZ 85254
Phone: (602) 708-1450
don@donbivens.com
max@donbivens.com

***Counsel for Plaintiff***

\* *pro hac vice* application forthcoming

54